## Case No. 15,623.

### UNITED STATES v. LOGAN.

[2 Cranch, C. C. 259.] 1

Circuit Court, District of Columbia. Oct. Term, 1821.

CRUELTY TO ANIMALS.

Public cruelty to a horse is in indictable offence.

Indictment for cruelty to a horse in a public street in Washington.

Verdict, guilty. Sentence $10 fine, and twenty days' imprisonment.

---

## Case No. 15,624.

### UNITED STATES v. LOGAN.

[12 Int. Rev. Rec. 146.]

Circuit Court, E. D. Tennessee. 1867.

INTERNAL REVENUE ACT—FAILURE TO PAY DISTILLERS' TAX—PERSONS CRIMINALLY LIABLE.

[1. One employed by another as a laborer in a distillery is not carrying on the business of a distiller, so as to be criminally liable for not having paid the tax.]

[2. To convict one under the act for retailing liquor without payment of the tax, the defendant must be proven to have held himself out publicly as following the business as one of his means of gaining a livelihood.]

---

1 [Reported by Hon. William Cranch, Chief Judge.]

1 [Reported by Hon. William Cranch, Chief Judge.]

The defendant [Lea Logan] was indicted for distilling and retailing, under section 44 of the act of July 20, 1868 [15 Stat. 142], without having paid the special tax as a distiller or retail liquor dealer.

O'Connell Russell, the first witness, testified that he had contracted with defendant to deliver to a certain mill near the distillery for the defendant, some corn, for which defendant was to give h'm one gallon of whiskey for each bushel of corn so left at the mill. This was in the summer of 1869. Witness had taken one bushel and a half of corn to the mill under this arrangement. Had been at the distillery on two or more occasions when defendant was doubling, and had received from defendant three quarts of whiskey there at the still house, on two different occasions, and that before he received all he was entitled to, the distillery was broken up. On cross-examination witness stated he had seen John Wimberly at the still at one or more times, but that his dealings were all with defendant. Witness knew of other parties who had also bought whiskey from defendant in a similar way he had, and that defendant kept whiskey there, as he supposed, for sale. Bartley Russell, next witness, testified to having furnished defendant corn in exchange for whiskey; that on two or more occasions he had been at the distillery; saw defendant engaged in doubling and got whiskey from him in small quantities under said contract of exchange. Witness had seen John Wimberly there at some of the times he had been there, but did not know whether Logan or Wimberly was the owner and proprietor of the distillery. G. M. Green, next witness, testified that he was the revenue officer who seized the still about November last. That defendant was with six or eight others at the still, and the still was running; and that defendant at his (witness's) request helped him take the still out of the furnace. On cross-examination, defendant's counsel asked witness what defendant said at the time about his being only employed by Wimberly to carry on the work, to which the district attorney objected, as being immaterial; but THE COURT overruled the objection, when witness stated that the defendant said at the time he was working for Wimberly who had employed him. John Norwood, next witness, testified that he had delivered corn in exchange for whiskey also; that he had made his contract with John Wimberly, but had got the whiskey from defendant, and had been at the still-house a good many times; had seen both Logan and Wimberly there at work. On cross-examination this witness was also asked as to the statements he had heard from either Logan or Wimberly while at the distillery, and engaged in distilling as to who was the proprietor. To this, district attorney also objected; first, because it was an immaterial matter as to who was the principal in the transaction, except it was for the purpose of assisting the

court in determining the proper punishment that should be inflicted in case of conviction; and, secondly, that Wimberly being a competent witness himself, any statements he may have made were incompetent to be proven in this case. THE COURT overruled the objection and permitted witness to state anything he may have heard either defendant or Wimberly say while at the distillery, and engaged in carrying it on, relative to this matter. Witness then stated he had heard both of them say that Wimberly was the proprietor and defendant was working for him.

This being the substance of the testimony given by witnesses for the government, the defendant introduced no proof.

In the argument of the case, defendant's counsel insisted that under the proof, the defendant was shown to have been an employee merely, and therefore could not be said to be "carrying on the business of a distiller," as only persons who were principals in the transactions are contemplated by and embraced within the forty-fourth section of the act of July 20, 1868; therefore the defendant should be acquitted on this count. Under the second count, for retailing, defendant's counsel insisted that proof showing the defendant guilty of selling whiskey on one, two, or a half dozen different occasions, of a pint or quart each time, did not constitute the offence of "carrying on the business of a retail liquor dealer" under said forty-fourth section; but that to be brought within the offence here charged, the proof must show not only that the party selling was acting for himself and not as a clerk or employee of another, but also that he held himself out publicly as being engaged in the business of retailing, prepared and willing to accommodate all who may reasonably be expected to call upon him.

The district attorney controverted these propositions as being very novel in their nature and manifestly unsound, and insisted the rule "that in misdemeanors, all who in any wise aid, encourage, or abet in the transaction, are guilty as principals, and may be so charged," applies to both counts in the indictment; that it was a matter of no moment to the government who was principal in the transaction; that the government must deal with the party caught engaged in the unlawful transaction; and if there was another who had furnished the pecuniary aid, and who was the inducing party to this unlawful transaction, while this latter would also be equally guilty, or even might deserve a more severe punishment, yet this defendant is none the less guilty in law; that under the law under which this indictment is found and the definition given in the statute to the term "distiller," not only the party who has the business carried on or is interested in the carrying on of the business, but those who actually perform the labor or otherwise aid or assist in carrying on the business, are guilty, and may be convicted under the first

count of this indictment. In support of this position, the district attorney referred to the decision of Judge Benedict in the case of U. S. v. Mulrany [see note at end of case], and of Judge Krekel in the case of U. S. v. Howard [Case No. 15,401]. The district attorney insisted that the doctrine here contended for by defendant's counsel was at variance with the decisions of courts, and, if accepted as law, will be ruinous in its tendency to defeat the very purposes of the law, and to shield from punishment the very parties the law intended should be held responsible for their guilty acts. That while it might be true that only those who were really interested in the business as principals were alone responsible to the government for the special tax imposed for the carrying on of the business, and only their property could be distrained upon to collect the same, except as the statute has specially otherwise provided for, yet that in a criminal prosecution, a different rule applies; and if a party knowing what the law requires to have been done by his employer (as all parties are presumed to) sees fit to undertake for another to carry on the labor or otherwise aid in the matter without first ascertaining that the employer has complied with the law, such person takes upon himself the risk of being punished under that law, if the same has been violated.

As to the second count, the district attorney insisted that the argument contended for by defendant's counsel, "that proof of occasional acts of retailing did not constitute a violation of the law, but that a party must hold himself out publicly as engaged in the business," was strange indeed, and if recognized as the law of the case would require of the government to show either that the party had set himself up publicly as a violator of law, the punishment for which is so severe, or else, by bringing the people of whole neighborhoods into court as witnesses, that by the number of times the matter may be shown to be something more than a mere occasional act, but in fact at least one of the matters of business which the party is engaged in carrying on, and from which he gains at least a portion of his livelihood. To require either will, in effect, defeat in most cases the law itself. The experience of all men teaches that it is in secret, so far as possible, that violators of law carry on their business, and especially is this true with regard to dealers in spirits.

The district attorney referred to ruling of Mr. Rollins, commissioner of internal revenue, contained in series 3, No. 4, of regulations, and published in Internal Revenue Record of April 6, 1867, and to the uniform rulings of Commissioner Delano subsequent to this, to show the construction which had been placed upon the statutes, and that it had uniformly been the holding of the revenue department that even occasional acts of retailing spirits would make a person guilty; and they. had acted upon such construction

of the law in assessing and collecting taxes under the revenue laws, both under the acts of June 30, 1864 [13 Stat. 223], July 13, 1866 [14 Stat. 98], and July 20, 1868 [15 Stat. 142]. The district attorney further insisted that, however the court might charge upon these legal propositions, the jury would find the defendant guilty as principal in the transaction; at least that defendant had not shown by the best proof available that he was not the principal, which he should have done if the fact be so.

E. C. Camp, U. S. Dist. Atty.
George Brown, for defendant.

CHARGE OF COURT. The court charged the jury that the simple question for them to determine was "whether the defendant carried on the business of a distiller or retail liquor dealer." That, as to the first count, if the defendant was found engaged in the act of distilling, the jury would, without further proof, presume that he was the person engaged in carrying on the business of a distiller; but if the proof shall also show that the defendant was not the proprietor and had no interest in the distillery, and was only employed by some other person as a laborer in carrying on the work of distilling, then in law he cannot be said to be carrying on the business of a distiller. It is the party or parties having an interest in as proprietors of the distillery that can in law be said to be carrying on the business. Any different construction which would hold a clerk or employee liable to a criminal prosecution because of a failure of a principal or proprietor to comply with the law, would have no sense, no justice or law, on which to base it, no matter what court or judge has or shall so decide. If this is so, then not only the employer, but the clerk and the hired laborer, will be required to pay the special tax, and in this way more than one special tax will be required for the same business. This the government does not require, and therefore only the party or parties in interest as proprietors or owners does the government look to for payment of the special tax; or if that be not paid and the business carried on, against him only does it inflict its punishment. He alone can be said to be "carrying on the business." If it be proven that defendant was found engaged in distilling, and from the proof the jury shall be in doubt as to whether he was interested as owner or principal in the business or not, and shall believe that defendant had it in his power to produce evidence which would clear up that doubt and fails to do it, the jury should resolve that doubt against the defendant, and find a verdict of guilty against him on the first count.

As to the second count, all I have said to you relative to the distinction to be drawn between the principal and his employer, and the presumptions arising from proof of the doing

of the act and the necessity of proof by defendant showing his capacity of clerk or hired servant in the doing of the act, applies also to this count. But. more than this it must be shown by the government, before they can obtain a conviction on this count, that not only defendant was acting for himself and not as employee of another, but the defendant must be proven to have held himself out publicly in some way as following the business as at least one of his means of gaining a livelihood. It must be a business which the party engages in in such a manner and to such extent as shows a readiness to supply whoever may reasonably be expected to call on him. Occasional acts or a few instances of selling spirits do not constitute the offence, if the matter is not done in such manner as shows that it is a business regularly carried on, not secretly and to the few, but publicly and to all who desire to purchase upon the same terms.

Notwithstanding this charge, the jury returned a verdict of guilty as charged in the indictment, and no motion for a new trial being made, the defendant was sentenced to six months' imprisonment, and to pay a fine of $1,000 and costs.

NOTE [from 6 Int. Rev. Rec. 20.] The sentence of Judge Benedict in the Case of Mulraney, referred to in the text, and also in the Case of Freel, is as follows:

In the United States circuit court for the Eastern district of New York, Judge Benedict passed sentence on James Freel, who had been indicted and convicted for distilling whiskey without paying the special tax, and distilling in a dwelling-house, since September 1, 1866. Judge Benedict opened by saying that the law under which Freel had been convicted was an important one, and continued:

"It is and must be. a stringent law, and it must be enforced But two ways are open to the government to enforce that law. One is to take the property of the persons that offend, and the other is to imprison. The object of all actions is to punish the offender. Another object is to deter others by the punishment which is so inflicted. Now. in your case. it seems that for some months you carried on the business without any attention to the law. Argument has been made that there is a change in the law, but I cannot ignore the fact that it was notorious that the change went into effect on the 1st of September, and that all persons legally in the business conformed substantially to that change, and they do so now. It likewise appears that, first, the milder remedy of the law was resorted to. the property was taken and forfeited. You bought it back, as you had a perfect right to do. but then did not comply with the law. You kept the still in the place, and it was seized a second time. You are therefore now brought to the second branch of this law, which endeavors to enforce itself by imprisonment; and, I must believe, under all the evidence, that you deserve that punishment for your own participation in that matter. I also must notice that this law is widely disobeyed. I must also take notice that it seems to be understood that violations of the revenue law can be perpetrated with impunity. And nothing is more important in this community than that the people should understand that the violation of the revenue law is attended with hazard; that it is not the violation of a mere contract, a failure to keep a promise; that the laws of the United States in this regard must be obeyed. You are the first man that has been convicted and brought to sentence in this county. —I do not know, but the first man in both cities together. 1 am inclined to the opinion that the government has delayed imprisoning citizens in the hopes that they will obey this law; and you were the first person convicted either in New York or in Brooklyn. I therefore must regard, in passing sentence upon you, the effect upon the public. I must make you an example of all persons in this community, that they may know what it is to violate the law of the United States with regard to the revenue. The section under which you have been convicted would impose a fine, and also imprisonment for a term not exceeding two years. I shall, in your case, in view of all the circumstances, impose upon you the extremity of the statute, and sentence you to imprisonment for a space not exceeding two years. the sentence to be executed in the Albany penitentiary."

Hugh Mulraney, convicted for a similar offence was also arraigned for sentence, and the judge said:

"The remarks which I made to the prisoner before you will be applicable to your case in the same degree. You are a man of intelligence,— a man who was before, and perhaps now, of some property. In your dwelling house. in which you lived, under the floor of your parlor, was erected a still, in full operation. It was known to your family, and was known to you; and the excuse—the only excuse which has been presented here. is that you leased the basement to another party, who was the guilty party; not yourself. There is reason to suppose. in your case,—to surmise, in your case as in the case of the previous prisoner,—that there are persons, perhaps more able, who are the inducing parties to these violations of the law; and that persons in moderate circumstances are put forward, and receive the punishment. while they who furnish the capital can go with impunity. This is one of the misfortunes attending all human affairs, and the only way the government can do is to convict and punish those that are caught. I confess to surmise in your case that there are parties who have not appeared here as prisoners, that may know more about this than has been disclosed. It appears that you were away most of the time. I have read your affidavit. You have a wife and six children. and I take that into consideration; 1 take somewhat into consideration the fact that your case, perhaps. has not been presented so strongly as it might have been. If I followed up the verdict of the jury. I should impose upon you the same penalty that I imposed upon the former prisoner; but. in view of the circumstances and your family. I shall reduce imprisonment and shall sentence you to be imprisoned for the space of twelve months. I impose no fine.